# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

DONOVAN HINKLE

VERSUS

USAA GENERAL INDEMNITY
COMPANY

CIVIL ACTION

NO. 17-156-JWD-EWD

## RULING AND ORDER

The first matter comes before the Court on two motions: (1) the *Motion for Summary Judgment* (Doc. 12) filed by Defendant USAA General Indemnity Company ("USAA" or "Defendant"), and (2) the *Motion for Partial Summary Judgment* (Doc. 14) filed by Plaintiff Donovan Hinkle ("Hinkle" or "Plaintiff"). Both motions are opposed (Docs. 16, 17.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, the Defendant's motion is denied and the Plaintiff's motion is granted.

I. **Relevant Factual Background[1]**

A. **Car Accident**

The motor vehicle accident made the subject of this proceeding ("subject accident") occurred in the early morning hours of April 23, 2016 on Interstate 10 eastbound near the Atchafalaya Basin Spillway in Iberville Parish, Louisiana. On the evening of April 2, 2016, Hunter James Clark ("Clark") and Donovan Hinkle ("Hinkle") decided to take a trip to Baton Rouge, Louisiana. The two (2) individuals left Fort Polk, Louisiana, driving in a 1998 Honda Accord

---

[1] The parties have agreed upon material facts in a joint stipulation. (Doc. 12-3.)

owned by Clark. Clark was the driver of the 1998 Honda Accord and Hinkle sat as the front-seated passenger.

The subject accident involved a 2007 Chevrolet Avalanche, operated by James Owen Merritt ("Merritt"), colliding with the stopped 1998 Honda Accord, and a stopped 1997 Acura RL, owned by Frank Cornelius Stewart ("Stewart"). The 1998 Honda Accord was insured by defendant, USAA General Indemnity Company ("USAA"), pursuant to USAA policy number 03899 82 74G 7101 5 ("the policy"), providing for automobile liability coverage and uninsured/underinsured motorist coverage with limits of $50,000 per person and $100,000 per accident, and personal injury protection coverage with a limit of $5,000 per person.

Sometime before the subject accident, Clark, as driver, and Donovan Hinkle ("Hinkle"), as front-seated passenger, noticed a disabled Acura on the shoulder of Interstate 10 eastbound. Clark pulled his Accord to the side of the road to lend assistance to Stewart, who advised of his need for gasoline and a battery "jumpstart." Clark, Hinkle, and Stewart then travelled together to the Tiger Truck Stop. Stewart purchased a gas container and gasoline. Clark, Hinkle, and Stewart proceeded back to the location of Stewart's disabled Acura.

Upon returning to the disabled Acura, Clark maneuvered his Accord onto the shoulder with the front of his vehicle facing westbound and pointed toward front of Stewart's Acura, such that the disabled Acura could be jumpstarted. Clark placed the Accord in park and all three persons (Clark, Hinkle, and Stewart) exited the vehicle. All three persons proceeded with the process of filling the disabled Acura with gasoline and affixing jumper cables to the batteries of both the disabled Acura and the Accord. Because the Acura did not have a device to hold its hood upright, Stewart held the hood up while the jumper cables were attached by Clark and Hinkle.

After affixing the jumper cables, Hinkle entered and sat in the front driver's seat of the

disabled Acura, turning the vehicle keys in the ignition to attempt to start the Acura. As Hinkle was seated inside the disabled Acura, Clark was seated in the front driver's seat of his Accord, revving the engine to assist in charging the disabled Acura's battery. The three persons (Clark, Hinkle, and Stewart) repeated their respective tasks for some time, unsuccessfully.

If the attempt to jumpstart the Acura had been successful, Hinkle and Clark intended to proceed on their drive to Baton Rouge in Clark's vehicle, with Hinkle as the front seated passenger and Clark as the driver. While Clark was seated in the driver's seat of his Accord, and while Stewart was holding upright the hood of the Acura, and while Hinkle was seated in the driver's seat of the disabled Acura, a Chevrolet Silverado operated by Merritt on Interstate 10 eastbound collided with the disabled Acura and the Accord.

At the time of the collision, Hinkle was not in physical contact with the Accord. At the time of the collision, Hinkle was seated in the driver's seat of the disabled Acura. After the collision, Hinkle remained inside the disabled Acura until such time as Clark was able to extract Hinkle from the vehicle. Clark and Hinkle are not related by blood, marriage, or adoption. Hinkle is not the named insured or an operator listed under the USAA policy.

### B. UM Insurance Policy

The USAA policy provides uninsured motorist (UM) coverage under its Part C – Uninsured Motorists Coverage to:

**1.** You or any family member

**2.** Any other person occupying your covered auto.

**3.** Any person for damages that person is entitled to recover because of BI [Bodily Injury] to which this coverage applies sustained by a person described in 1. Or 2. above.

(Doc. 12-5 at 27.) Critical to these motions, the policy defines "occupying" as "in, on, getting into

3

or out of." (Doc. 12-5 at 18.)

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## III. Discussion

### A. Parties' Arguments

#### 1. Defendant's Motion for Summary Judgment (Doc. 12)

##### a. Defendant's Original Brief (Doc. 12-2)

Defendant argues that from the plain language of the policy, the plaintiff cannot be found

4

to have "occupied" the insured Accord. According to Defendant, Plaintiff was not "in, on, getting into or out of" the Accord (a) because he was physically "in" or inside another vehicle; (b) because Plaintiff would have had to get out of the other car in order to "get into" the insured vehicle; and (c) because Plaintiff would have to get out of the car he was in, then into the insured Accord, then out of it to be "getting out of" the Accord. Defendant cites to *Landry v. Allstate Ins. Co.*, No. 10-220, 2010 WL 3528572, at *2 (La. App. 1 Cir. 2010), which explained that the "general, ordinary, plain and popular meaning" of the policy controlled. Thus, Defendant argues that Hinkle's actions in conjunction with the plain language of the policy show that Hinkle was not "in, on, getting into, or out of" the insured Accord. Defendant acknowledges that other courts give the phrases "alighting from" or "upon" a broad interpretation, but Defendant says that these phrases are not present in the USAA policy.

### b. Plaintiff's Opposition (Doc. 16)

Plaintiff argues Hinkle did not need to be in physical contact with the insured vehicle at the time of the accident because he had a "relationship" to it such that he was "in, on, getting into or out of" it within the meaning of Louisiana jurisprudence and law. (Doc. 16 at 4 (citing *Smith v. Girley*, 255 So. 2d 748, 751 (1971).) Plaintiff cites to *Smith* because both in that case and the present case, the plaintiffs' use of the insured car to jumpstart the disabled car created a relationship between them.

Plaintiff also cites to other cases to support his position. Plaintiff points to *Westerfield v. LaFleur*, 493 So. 2d 600, 601 (La. 1986), arguing that, in that case, the court considered whether or not the person was engaged in activities related to the use of the insured vehicle and decided the plaintiff covered despite the fact that he was not touching the bus in question. Furthermore, plaintiff draws attention to *White v. Williams*, 563 So. 2d 1316, 1317 (La. App. 3 Cir. 1990),

5

contending that, in *White*, the court held the plaintiff was covered since his physical departure from the insured car was solely for purposes of performing an act directly related to the car, and the plaintiff never abandoned his relationship with the insured car. Although Plaintiff was on his way back to the car, the *White* court did not impose a requirement the plaintiff must be moving toward the car. *Id.* at 1318. Similarly, here, Hinkle maintains that he was involved in acts directly related to the insured car since he was using its energy for a jumpstart. Plaintiff also states that he had a relationship to the car since he was a passenger before the accident and intended to continue as a passenger after they successfully jumped the car.

Additionally, Plaintiff challenges Defendant's citation to *Landry*, arguing that the *Landry* court determined plaintiff was not "occupying" because his physical and intentional relationship was attenuated as a result of being at least 300 feet away. *Landry*, 2010 WL 3528572, at *1. Hinkle, however, was only a few feet away, and plaintiff argues that USAA failed to show Hinkle did not have a clear relationship to the insured Accord or that he was required to be in physical contact with it.

### 2. Plaintiff's Motion for Partial Summary Judgment (Doc. 14)

#### a. Plaintiff's Original Brief (Doc. 14-2)

Plaintiff moves for partial summary judgment on the issue of insurance coverage. Plaintiff contends that the *Smith* case alone should be dispositive since that plaintiff was also using battery power to jumpstart another car. *See Smith*, 255 So. 2d at 229-30. Plaintiff contends that the Louisiana Supreme Court found the plaintiff was "upon" the car despite not touching the insured car at the time of the accident and that he never abandoned his status of occupant of the insured vehicle. *Id.* at 230. According to Hinkle, since he was also jumpstarting a vehicle, he should be covered under USAA's UM policy. Plaintiff also argues that he never abandoned his status of

6

occupant since he intended to continue as a passenger to Baton Rouge.

Furthermore, Plaintiff notes that *Westerfield's* relationship test was applied to *White* where the court found that no physical contact is necessary and that the plaintiff's physical departure was solely to perform an act directly related to the car. *White*, 563 So. 2d at 1319. Plaintiff also argues that he similarly only departed the insured Accord to jump the disabled car, both of which cars were physically linked through the jumper cables. Additionally, Plaintiff maintains that he was only temporarily in the disabled vehicle and never intended to occupy it as he intended to continue to Baton Rouge in the insured vehicle.

### b. Defendant's Opposition (Doc. 17)

Defendant responds that not all "occupying" clauses are identical, and no broad test can apply to all insurance contracts for UM coverage. However, Defendant notes that Louisiana law has held that "in, on, getting into or out of" is clear and unambiguous language that should not be expanded. *See Valentine v. Bonneville Ins. Co.*, 691 So.2d 665, 670-71 (La. 1997). Insurance policies are contracts in which ordinary contract principles of the Louisiana Civil Code apply. *See id.* at 668. For example, when the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written. *See id.*

Moreover, the Defendant cites to *Valentine* and *Armstrong*, maintaining that both cases determined that the "occupying" clause that stated "in, upon, getting in, on, out or off" was not susceptible to more than one meaning and was clear and unambiguous. *Valentine*, 691 So. 2d at 671; *Armstrong v. Hanover Ins. Co.*, 614 So. 2d 312, 313 (La. App. 4 Cir. 1993). Defendant further argues that *Westerfield's* language was more expansive and different, and other courts have followed *Valentine* and *Armstrong* to abandon *Westerfield*'s relationship test when the language of the "occupying" clause was clear and unambiguous. (Doc. 17 at 4 (citing *Matthews*

7

*v. Pete Mercer Const.*, 758 So. 2d 379, 382-83 (La. App. 2 Cir. 2000); *Landry*, 2010 WL 3528572.) Additionally, Defendant also notes that *Valentine* and *Armstrong* are more recent cases that focus on the general and common meaning of the language of the policy when it is clear and unambiguous.

Finally, Defendant contends that, since insurance policies are not to be interpreted in an unreasonable or strained manner that would enlarge or restrict what is reasonably contemplated by the terms of the policy or so as to achieve an absurd conclusion, the plain language of USAA's policy should apply. (Doc. 17 at 4 (citing *Magnon v. Collins*, 739 So. 2d 191, 196 (La. 1999)).) Furthermore, to rebut Plaintiff's reliance on *Smith*, the Defendant argues that in *Smith*, the term "upon" was the only language to have been deemed ambiguous and required liberal interpretation, but the term "upon" does not appear in the present USAA policy. Defendant avers that *Smith* cannot solely be dispositive, as Plaintiff argues, because *Smith's* plaintiff was moving toward the vehicle, so the only factual similarity between that case and the present one is that the plaintiffs were both trying to jumpstart a vehicle.

### B. Applicable Law

Where jurisdiction is founded on diversity, federal courts must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938*); James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (citing *Westlake Petrochems., L.L.C. v. United Polychem., Inc.*, 688 F.3d 232, 238 n.5 (5th Cir. 2012)); *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.,* 352 F.3d 254, 260 (5th Cir. 2003); *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997). Stated more specifically, where, as here, there is no Louisiana Supreme Court case directly on point, the Court must make an *Erie* guess by predicting how the Louisiana Supreme Court would rule. In making an *Erie* guess, the Court relies

on the following: (1) decisions of the [Louisiana] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Louisiana] Supreme Court decisions on related issues, (3) dicta by the [Louisiana] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Louisiana] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries. *Gulf & Mississippi River Transp. Co. v. BP Oil Pipeline Co.,* 730 F.3d 484, 488–89 (5th Cir. 2013) (applying Louisiana substantive law); se*e also Pure Air Daigle, L.L.C., v. Stagg*, No. 6:16-cv-013222017, WL 4020981, at *3 (W.D. La., Sept. 15, 2017) (applying Louisiana substantive law and same seven factors from *Gulf & Mississippi River Transp. Co.*).

### C. Principles of Interpreting Insurance Policies under Louisiana Law

In *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583 (La. 2007), the Louisiana Supreme Court laid out the comprehensive and well-established framework for interpreting insurance policies under Louisiana law, which this Court now quotes in full:

> In analyzing insurance policies, certain elementary legal principles apply. First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. *LeBlanc v. Aysenne*, 921 So. 2d 85, 89 (La. 2006); *Edwards v. Daugherty*, 883 So. 2d 932, 940 (La. 2004); *Cadwallader v. Allstate Insurance Co.*, 848 So. 2d 577, 580 (La. 2003); *Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co.,* 630 So. 2d 759, 763 (La. 1994).
>
> According to those rules, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent. See, La. Civ. Code art. 2045; *Edwards*, 883 So. 2d at 940; *Cadwallader*, 848 So. 2d at 580; *Blackburn v. National Union Fire Insurance Co. of Pittsburgh*, 784 So. 2d 637, 641 (La. 2001). Courts begin their analysis of the parties' common intent by examining the words of the insurance contract itself. *See* La. Civ. Code art. 2046; *Succession of Fannaly v. Lafayette Insurance Co.*, 805 So. 2d 1134, 1137(La. 2002); *Blackburn*, 784 So. 2d at 641 ("[T]he initial determination of the parties' intent is found in the insurance policy itself."). In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. *See* La. Civ. Code art.

9

2047; *Edwards*, 883 So. 2d at 940-41; *Cadwallader*, 848 So. 2d at 580; *Succession of Fannaly*, 805 So. 2d at 1137.

An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. *See* La. Civ. Code art. 2050; *Hill v. Shelter Mutual Insurance Co.*, 935 So. 2d 691, 694 (La. 2006); *Succession of Fannaly*, 805 So. 2d at 1137; *Peterson v. Schimek*, 729 So. 2d 1024, 1029 (La. 1999). Neither should an insurance policy be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *LeBlanc*, 921 So. 2d at 89; *Edwards*, 883 So. 2d at 941; *Cadwallader*, 848 So. 2d at 580; *Peterson*, 729 So. 2d at 1028.

When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. *See* La. Civ. Code art. 2046; *Hill*, 935 So. 2d at 694; *Peterson*, 729 So. 2d at 1028. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Cadwallader*, 848 So.2d at 580; Succession of *Fannaly*, 805 So.2d at 1138. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent. *Edwards*, 883 So. 2d at 941; *Succession of Fannaly*, 805 So.2d at 1138; *Peterson*, 729 So.2d at 1029.

Nevertheless, if, after applying the general rules of contractual interpretation to an insurance contract, an ambiguity remains, the ambiguous contractual provision is generally construed against the insurer and in favor of coverage. *See* La. Civ. Code art. 2056; *Succession of Fannaly*, 805 So. 2d at 1138; *Peterson*, 729 So. 2d at 1029. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. *Edwards*, 883 So.2d at 941; *Cadwallader*, 848 So. 2d at 580; *Carrier v. Reliance Insurance Co.,* 759 So. 2d 37, 43 (La. 2000). This strict construction principle applies, however, only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. *Edwards*, 883 So. 2d at 941; *Cadwallader*, 848 So. 2d at 580; *Carrier*, 759 So. 2d at 43.

The determination of whether a contract is clear or ambiguous is a question of law. Edwards, 883 So. 2d at 941; *Cadwallader*, 848 So. 2d at 580; *Louisiana Insurance Guaranty Association*, 630 So. 2d at 764. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law

10

and summary judgment is appropriate. *Robinson v. Heard,* 809 So. 2d 943, 945 (La. 2002); *Peterson*, 729 So. 2d at 1029.

*Sims*, 956 So. 2d at 588-90.

### D. Analysis

#### 1. Summary of Ruling

The crux of this decision lies in the definition, interpretation, and application of the term "occupying" a vehicle under USAA's UM policy. Again, this policy covers anyone "occupying" the vehicle, which the policy defines as "in, on, getting into or out of" the vehicle. (Doc. 12-5 at 18.)

In short, Plaintiff has the better position. While there is no definitive Louisiana Supreme Court case on point interpreting a policy with the precise language at issue, the Court's *Erie* guess, based on the jurisprudence discussed below, is that the phrase "getting into or out of" is ambiguous and that the *Westerfield* relationship test applies. Applying that test to the undisputed facts, and construing the ambiguous policy against the insurer (as the Court must do), the Court finds that the USAA policy provides coverage to Plaintiff. Consequently, Defendant's motion for summary judgment should be denied, and Plaintiff's motion for partial summary judgment should be granted.

#### 2. Interpretation of "Occupying" in UM Policies Under Louisiana Law

Louisiana jurisprudence concerning the interpretation of "occupying" in insurance policies involves interpreting the contract language on a case-by-case basis. *See Valentine*, 691 So. 2d at 670. Each determination is highly fact and contract specific; thus, in some cases, depending on the policy language, the plaintiff may not even need to touch the insured vehicle in order to be covered, while in other cases, the court may determine that the plaintiff was too far in time and physical proximity to the vehicle to be covered under the policy.

For example, in *Smith*, the plaintiff, a sheriff, pulled over his patrol car to jumpstart a stalled vehicle. *Smith*, 255 So. 2d at 752. After he attached the jumper cables to the disabled car and was on the way back to attach the cables to his vehicle, another car hit the stalled car and pinned the plaintiff between the stalled car and his patrol car. *Id.* at 750. The plaintiff's leg was also touching the insured car. *Id.* at 752. The insurance policy covered persons who sustained bodily injury while "in or upon, or while entering into or alighting from" a covered vehicle and applied to "any other person while occupying an insured automobile." *Id.* at 749. The Louisiana Supreme Court found that the plaintiff was "upon" the insured vehicle for purposes of the UM policy. *Id.* at 752. The court considered the word "upon" ambiguous, which allowed the court to apply the policy broadly. *Id.* at 750.

Similarly, in *Westerfield*, a child was struck and killed as she was crossing a highway to get to the insured school bus. *Westerfield*, 493 So.2d 600, 601. The UM provision defined "occupying" as "in or upon or entering into or alighting from" the vehicle. *Id.* Although the plaintiff was not physically on, inside, touching or entering, she was found to be "occupying" it for UM purposes because she was walking toward it and was "engaged in the process provided by law for entering into the school bus." *Id.* at 602. The Louisiana Supreme Court endorsed a relationship test:

> It is not physical contact with the vehicle that serves as a basis to determine whether a person is injured *while* alighting from a vehicle but it is the *relationship* between the person and the vehicle, obviously of time and in distance with regard to the risk of alighting that determines specific coverage. (emphasis added).

*Id.* at 603 (quoting with approval *Day v. Coca-Cola Bottling Co.*, 420 So. 2d 518, 520 (La. App. 2 Cir. 1982)).

The *Westerfield* court further found that this relationship test was supported by policy concerns related to the factual circumstances of the case, in particular the "safety zone

specifically provided by positive law" because it was a "legally protected entryway." *Id.* at 602, 604. The Court reasoned that the child, the bus, and the bus driver were bound together legally and practically as constituents of the process to get the child to the bus, which created a "special, exigent relationship." *Id.* at 606. Moreover, because parties who enter contracts to insure school buses should be aware of these risks, it is reasonable to infer that they intend "entering into" to include the process of a child traversing a roadway to enter a bus. *Id.* at 606.

Additionally, in *Martinez*, the court found that the relationship test supported a finding that the plaintiff was "occupying" his vehicle, even though he was outside the vehicle at the time he was injured. *Martinez v. Great American Ins.*, 499 So. 2d 364, 366 (La. App. 4 Cir. 1986), *rev'd on other grounds*, 503 So. 2d 1006 (La. 1987). The policy defined "occupying" to include "in, upon, getting in, on, out or off." *Id.* at 365. The accident occurred while the plaintiff, a wrecker operator who worked part-time for a towing service, arrived to lift a disabled truck. He was connecting the two vehicles with tow chains and operating the wrecker's lift mechanism when he was struck by an uninsured motorist. *Id.* There was no factual dispute that the two vehicles were connected at the time of plaintiff's injury, and he also had a close relationship in time and space to the disabled vehicle. *Id.* at 366. Whether the plaintiff was, in fact, touching his insured wrecker vehicle, the court determined that under the relationship test, he was "occupying" the vehicle. *See id.*

In *White*, the plaintiff was a passenger returning to the car after paying for gasoline inside a service station when he was hit by a car. *White*, 563 So. 2d at 1317. The policy language defined "occupying" as "in, on, getting into or out of," which the court did not find was sufficiently different from *Westerfield* or *Martinez*. The plaintiff left his car solely for the purpose of paying for and pumping gasoline, which required him to cross a traffic lane. *Id*. The

13

plaintiff was "in fact in the process of resuming his physical contact with the vehicle when injured" because he was walking back to the insured vehicle after paying for gasoline to be used for the insured vehicle. *Id.* at 1318. Thus, the court concluded that the plaintiff never abandoned his relationship as passenger and granted UM coverage. *Id.*

More recently, the Louisiana Third Circuit Court of Appeal found that a police officer was "occupying" his police car when he was hit by an uninsured motorist while returning to his vehicle after picking up a flare which was located about 80 feet from his vehicle. *See Ashy v. Migues*, 760 So. 2d 440, 447 (La. App. 3 Cir. 2000). The Third Circuit followed *Westerfield* and its progeny to reach its conclusion, but also discussed the interpretation of the UM policy. *See id.* at 446-47. The court observed, "Whether the particular language of a contract is ambiguous depends on the facts to which the trier of fact is attempting to apply the language and the intentions of the parties at the time they executed the contract." *Id.* at 447. In this case, the contract language defined "occupying" as "in, upon, getting in, on, out or off." *Id.* at 445. Also, similar to the court in *Westerfield*, the Third Circuit found that the policy considerations and the parties' intentions at the time of contract formation favored an interpretation finding that the officer "occupied" his vehicle at the time of the accident. Specifically, it can be reasonably inferred that insurers of police vehicles intended "getting in" to encompass the "special exigent relationship between an officer and his vehicle." *Id.*

A separate line of Louisiana cases do not use the relationship test adopted in *Westerfield*. As USAA argues, the *Armstrong, Valentine,* and *Landry* courts all found that insurance policies which defined "occupying" as "in, upon, getting in, on, out or off" were "clear and unambiguous," in spite of other case law finding similar language ambiguous. Instead of looking to the relationship test, these courts instead distinguish the line of relationship test cases based upon differences in

14

UM policy language as it applies to the specific facts of those cases. However, *Valentine* and its progeny have not overruled the relationship test from *Westerfield*. Instead, both lines of analysis persist contemporaneously under Louisiana jurisprudence, dependent upon the factual context and the policy language at issue in each case.

Turning to these cases, in *Armstrong*, another Louisiana appellate case disputing an "occupying" clause, a highway flagman was fatally struck by an uninsured motorist and was not covered under the UM policy. *Armstrong*, 614 So. 2d at 313. The policy defined "occupying" to mean "in, upon, getting in, on, out or off." *Id*. The court believed that the policy language of the contract was "clear and explicit and [led] to no absurd consequences" and "no further interpretation may be made in search of the parties' intent." *Id*. Then, the court explained that the plain, ordinary, and popular meaning of the words in the policy would have to be distorted for the plaintiff's actions as a flagman on the side of the highway to qualify. *Id*. Furthermore, the court distinguished *Westerfield* and concluded the case was inapplicable since the *Westerfield* "occupying" clause was different, more expansive, and susceptible to more than one meaning. *Id.* The clause "entering into" was at issue in *Westerfield*, but that clause is not present in the policy at issue in *Armstrong*. *Id.*

In *Valentine*, the Louisiana Supreme Court relied on the *Armstrong* court's analysis. *Valentine*, 691 So. 2d at 667. Deputy Valentine directed traffic with arm signals and a flashlight for five to ten minutes when an uninsured motorist struck him. *Id.* The deputy at no time returned to or attempted to return to his vehicle. *Id.* at 671. The UM policy defined "occupying" as "in, upon, getting in, on, out or off." *Id.* at 670. While the Louisiana Supreme Court observed that the policy language at issue in *Westerfield* and similar cases was similar to the language at issue in *Valentine*, the court determined that *Westerfield* was distinguishable because the policy language

15

differed. Specifically, the court agreed with and relied on *Armstrong's* analysis and application of *Westerfield* and decided the case was also inapplicable since "entering into" was not the issue before the court or in the insurance policy. *Id.* at 671. The *Valentine* court reasoned that the language was different than *Westerfield's* policy because the insurance policy in *Westerfield* was ambiguous and susceptible to more than one meaning. *Id.* Conversely, *Valentine* determined that its policy was clear and unambiguous and used the "general, ordinary, plain and popular meaning" to determine the deputy directing traffic was not "occupying" a vehicle or covered by UM. *Id.* Although *Valentine* distinguished *Westerfield*, the court did mention physical and temporal relationship of the plaintiff as support for reaching the conclusion that the deputy was not "occupying" his vehicle. *See id*. Specifically, the plaintiff was directing traffic for about five or ten minutes before he was hit and he made no attempt to return to his vehicle at that time. *Id.*

In *Landry*, the court concluded that the "general, ordinary, plain and popular meaning" of the policy language controlled. *Landry*, 2010 WL 3528572, at *2. While walking on a highway median to retrieve and return a traffic warning sign to his employer's truck, the plaintiff was struck and killed by a vehicle. *Id.* at *1. The insurance policy defined "occupying" as "in, upon, getting in, on, out or off." The *Landry* court relied on *Valentine* because the policy language in both cases was identical. Because the Louisiana Supreme Court had previously determined that such language was "clear and unambiguous," the court found that the same language was identical in the *Landry* case. The court additionally observed that the plaintiff's relationship to the vehicle was physically and intentionally attenuated. *See id*. at *1, *2.

But, the Louisiana Fifth Circuit Court of Appeals, in analyzing the ancillary issue of whether the plaintiff was occupying the insured vehicle at issue, found that a plaintiff was occupying the vehicle for the purposes of uninsured motorist coverage even though he was more

16

than ten feet from it when he was hit by another vehicle. *Gauthreaux v. Allstate Ins. Co.*, 98-392 (La. App. 5 Cir. 3/30/99); 731 So. 2d 457, 458, 460. In that case, "occupying" was defined by the UM policy as "in, upon, getting in, on, out, or off." *Id.* at 459. However, since the vehicle was covered by his employer's insurance and the plaintiff was working at the time of his accident on a job for which the vehicle played an integral part (plaintiff was driving around to test water samples for his job), the court determined that his injuries were covered under the employer's policy. *Id.* at 460. The court implicitly rejected the decision in *Valentine* interpreting the same policy language and instead used the *Westerfield* relationship test. *See id.* at 459-60. Because the employee had previously settled for less than his employer's policy limits, the plaintiff could not seek additional recovery under his own insurance policy. *Id.* at 460.

### 3. Hinkle "Occupied" the Insured Vehicle under USAA's UM Policy

While it appears that a consensus as to the definition of "occupying" has not been reached with regard to the phrase "getting into or out of," in short, the Court's *Erie* guess, based on the above cases, is that USAA policy provides coverage for Hinkle's injuries.

First, contrary to Defendant's arguments, it is not clear based on the jurisprudence that *Valentine* and its progeny should decisively determine the outcome of this case. USAA's UM policy defines "occupying," as "in, on, getting into or out of," a definition which is slightly different from those of the preceding cases, with the notable exception of the *White* case, wherein that court determined verbatim language was ambiguous and found coverage. Moreover, there is not a significant difference between the "getting into or out of" language in the USAA policy at issue and the "entering into" language in the *Westerfield* cases where the courts found coverage.

Second, Defendant is incorrect that defining "occupying" as "in, on, getting into or out of"

17

is "clear and unambiguous." The court in *White* clearly believed that the exact same language was ambiguous. Moreover, again, the language in *Valentine*, *Armstrong*, and *Landry* was not identical to the policy language at issue in this case. In this highly fact-specific and contract-specific area of law, these three decisions are distinguishable from the present case. Specifically, in *Valentine* and *Armstrong*, which are factually analogous to one another and not to this case, the plaintiffs were directing traffic with no intention to return to their vehicle at the moment the accidents occurred. Meanwhile, *Landry* is distinguishable (1) because it relied on *Valentine* due to the fact that both cases contemplated identical UM policy language, and (2) because the court's reasoning indicated that, had it determined the contract language was ambiguous and applied the relationship test, the outcome would have been the same.

Third, the relevant jurisprudence indicates that the relationship test is appropriate under the facts of this case. Even in the cases Defendant cites, *Valentine* and *Landry*, Louisiana courts have been reluctant to abandon the *Westerfield* relationship test. In both of those cases, despite the courts' findings that the UM policy language was "clear and unambiguous," they still used the relationship test factors to indicate that the ultimate result would be the same. Thus, the relationship test is appropriate in the case at bar, for this reason and because this Court has already determined that the UM policy language in this case is ambiguous.

Fourth, the relationship test factors indicate that Hinkle was "occupying" the insured vehicle at the time of his accident. To summarize, the relationship test articulated in *Westerfield* and its progeny contemplates the plaintiff's physical and intentional relationship to his vehicle, including the time, distance, and the risk in relation to the coverage. *See e.g.*, *Westerfield*, 493 So. 2d at 602-3.

Here, Hinkle was in close physical proximity to the covered vehicle, much like the plaintiffs in *White* and *Martinez*. Additionally, the jumper cables physically connected the two vehicles, which is analogous to the chains connecting the two vehicles in *Martinez*. The physical distance between Hinkle and the covered vehicle could not have been as far as in some of the previously discussed cases (e.g., the distance between the officer and his vehicle in *Ashy*), because the cars must have been in close proximity to one another to be connected via jumper cables.

Hinkle's temporal relationship with the vehicle was also not too attenuated, since he only left the insured vehicle to help Stewart jumpstart his car, while Stewart held open the hood of his own vehicle. Hinkle's intention with regard to his relationship to the covered vehicle was to return to and enter the vehicle before resuming his trip to Baton Rouge with Clark. Also, similar to the plaintiff in *White*, Hinkle was involved in acts directly related to the insured car since he was using its energy for a jumpstart. He also had a relationship to the car since he was a passenger before the accident and intended to continue as a passenger after they successfully jumpstarted the car.

Finally, the risk of having one's car on the side of an interstate to assist another vehicle is one that is reasonably contemplated by the parties at the time of the insurance contract's formation. While the exact facts of this cases were potentially not those contemplated by the insurance company and the insured, it is likely that the parties reasonably contemplated such situations where the car might be at risk on the shoulder of an interstate. Such circumstances could certainly include a situation where the driver and passenger of the covered vehicle were lending assistance to another driver and might not physically be inside of their car at the time of those interactions.

Thus, application of the *Westerfield* relationship test is dispositive in favor of Hinkle. The Court's *Erie* guess is that the USAA UM policy is not "clear and unambiguous" in light of the relevant case law. Instead, the contractual language "getting into or out of" is ambiguous, and the Court should apply the *Westerfield* relationship test to resolve the issue of whether Hinkle "occupied" the vehicle at the time of his accident. Finding that Hinkle's relationship with the covered vehicle was sufficiently close in time and space, and that the circumstances in which he was injured were those reasonably contemplated as included in the insurance policy at the time the contract formed, the Court determines that Hinkle was "occupying" the insured vehicle at the time of his injury. Therefore, he is covered under USAA's policy. Plaintiff is thus entitled to partial summary judgment, and Defendant's motion for summary judgment is denied.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Partial Summary Judgment* (Doc. 14) filed by Plaintiff Hinkle is **GRANTED**.

**IT IS FURTHER ORDERED** that the *Motion for Summary Judgment* (Doc. 12) filed by Defendant USAA is **DENIED.**

Signed in Baton Rouge, Louisiana, on <u>August 8, 2018</u>.

                                         **JUDGE JOHN W. deGRAVELLES**
                                         **UNITED STATES DISTRICT COURT**
                                         **MIDDLE DISTRICT OF LOUISIANA**